**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LYNETTE BOOTH and BARBARA FORD,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **No.** _____ |
| | ) | **Judge** _____ |
| **PACIFIC WEBWORKS, INC., a Nevada corporation, THE QUAD GROUP, LLC, a Utah limited liability company, and BLOOSKY INTERACTIVE, LLC, a California limited liability company,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**<u>DEFENDANT THE QUAD GROUP, LLC'S NOTICE OF REMOVAL</u>**

Defendant The Quad Group, LLC ("Quad"), hereby removes the above-captioned action from the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Civil No. 2011 CH 25295, pursuant to 28 U.S.C. § 1453(b), 28 U.S.C. § 1441, and 28 U.S.C. § 1446(a), to the United States District Court for the Northern District of Illinois. In support of its removal, Quad states as follows:

1.      Plaintiffs filed their First Amended Class Action Complaint in the Circuit Court of Cook County, Illinois, County Department, Chancery Division (the "State court") on or about September 19, 2011 (a copy of the "Class Action Complaint" is appended hereto as Exhibit A). Quad was first served in this matter on November 2, 2011 (a copy of the Summons and email accepting service is appended hereto as Exhibit B). Thereafter, Quad received a Notice of Motion and Motion to Enforce Parties' Settlement Agreement and Release, filed on or about November 16, 2011 (a copy of the Notice of Motion and Motion are attached hereto as Exhibit C). No other pleadings have been filed or otherwise received by Quad.

14105231

2.      As required by 28 U.S.C. § 1446(b), this Notice of Removal is filed with this Court within thirty days of Quad's receipt of the Complaint.

<u>DIVERSITY OF CITIZENSHIP</u>

3.      Plaintiffs are Illinois residents. (Compl. ¶¶ 1-2.)  Pacific WebWorks, Inc. ("WebWorks") is a corporation organized under the laws of the State of Nevada.  (*Id.* ¶ 3.) WebWorks does business in a number of states and is headquartered in Salt Lake City, Utah. (<u>Id.</u>).  The Quad Group, LLC, is a Utah limited liability company with its headquarters in Salt Lake City, Utah.  (*Id.* ¶ 4.).  The Complaint alleges that, "The Quad Group is an affiliate/sister company of Pacific WebWorks and is jointly operated by substantially similar principals and employees." (*Id.*)  Defendant Bloosky Interactive, LLC is a California limited liability company with its headquarters and principal place of business located in Irvine, California.  (*Id.* ¶ 5.).  The number of members of all proposed plaintiff classes in the aggregate is greater than 100, and no defendant is a state, state official, or governmental entity.  *See* 28 U.S.C. § 1332(d)(5).

4.      Therefore, there is diversity of citizenship between Plaintiffs and Defendants because the named Plaintiffs are each citizens of a State different from any Defendant, and the diversity requirement is met under the Class Action Fairness Act, as defined under 28 U.S.C. § 1332(d)(2)(A).  *See* 28 U.S.C. § 1332(d)(2)(A).

<u>AMOUNT IN CONTROVERSY</u>

5.      The Class Action Complaint generally alleges that various persons or entities have utilized deceptive marketing strategies to sell products or services on the internet.  (*See generally* Compl.)

6.      Plaintiffs seek damages on behalf of themselves and "All persons in the United States and its territories who submitted payment information to Pacific WebWorks/The Quad Group for the purpose of obtaining Pacific WebWorks/The Quad Group's products or services, and who where charged, without authorization, any amount in excess of $3.00." (Compl. ¶ 59.).

7.      Plaintiffs' complaint does not allege an amount in controversy; however, Plaintiffs and the putative class do not affirmatively limit the damages claimed to an amount less

than $5,000,000. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 365, 366 (7th Cir. 1993) (when a plaintiff designates an amount in controversy in good faith and that amount precludes federal jurisdiction, state jurisdiction will stand "so long as the plaintiff, should she prevail, isn't *legally certain* to recover more") (abrogated on other grounds).

8.       When the plaintiff does not allege an amount in controversy, as is the case here, the defendant can remove to federal court by showing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.").

9.       In fact, when a plaintiff, as "master of the complaint, does not want to be in federal court and provides little information about the value of her claims," "a good-faith estimate of the stakes is acceptable if it is plausible and supported by the evidence." *Oshana*, 472 F.3d at 511. Jurisdiction can then only be defeated when "it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.*

10.      The Class Action Fairness Act provides for federal court jurisdiction over class action suits when the "amount in *controversy*" exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2) (emphasis added). In petitioning this Court for removal, Defendant in no way concedes the truth of the allegations in the Complaint, admits liability, or concedes that Plaintiffs or members of the class would be entitled to recover any or all of the amounts claimed. (*See* Declaration of K. Lance Bell ("Bell Decl.") ¶ 4 (appended hereto as Exhibit D)). Such an admission is not required. "[T]he statute does not make federal jurisdiction depend on how much the plaintiff is due to recover. The question is what amount is in controversy." *Spivey*, 528 F.3d at 985-86 (internal citations omitted). In calculating the amount in controversy, Quad relies on the allegations in the Complaint and assumes their truth for the purposes of this Notice of Removal only. *Id.*; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)

(holding that defendant "did not have to confess liability in order to show that the controversy exceeds the threshold…. [P]art of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands…. The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.").

11.     Thus, without admitting liability or damages, Quad respectfully submits that the amount in *controversy* in this case exceeds the $5 million threshold for federal jurisdiction.

12.     As a preliminary matter, the jurisdictional amount in controversy is met in this case by reference to a previous proposed settlement of Plaintiffs' claims.  Indeed, Plaintiffs have conceded that the amount in controversy in this action exceeds $5 million by asking the State court to enforce a proposed settlement agreement that would establish a "Settlement Fund" of up to $6,550,000.00.  (*See* Proposed Stip. of Class Action Settlement at ¶ 52, included as Exhibit 1-A to Plaintiffs' Motion to Enforce Parties' Settlement Agreement and Release, which has been attached hereto as Exhibit C).

13.     Additionally, Quad submits a declaration of WebWorks' President, K. Lance Bell. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (according to the Seventh Circuit, a defendant can establish the amount in controversy in many ways, including "by calculation from the complaint's allegations," "by reference to the plaintiff's . . . settlement demands," "or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands").

14.     Plaintiffs seek each of the following categories of damages, which the Court should consider for the purposes of determining the amount in controversy: (1) general damages, which requires an examination of purportedly unauthorized charges to the credit and debit cards of the prospective class; (2) statutory relief, and (3) attorneys' fees.  (*See generally* Compl.).

<u>General Damages:</u>

15.     Plaintiffs seek compensation for putative class members, who would potentially include all Defendants' customers residing in the United States and its territories.  (Compl. ¶

59.).  Plaintiffs seek actual and compensatory damages pursuant to various theories, including a statutory claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, the Automatic Contract Renewal Act, fraud, conspiracy to commit fraud, breach of contract, and restitution/unjust enrichment.  (Compl. ¶¶ 65-121.).  According to the allegations in the complaint, Plaintiffs' causes of action for damages are the result of an alleged course of conduct by Defendants wherein Defendants represented that customers would be charged less than $3.00 for a product, but customers' debit or credit card were then charged, without authorization, at least $69.90, and often more.  (*See generally* Compl.).

16.    To determine the amount in controversy for these claims, the Court must consider charges on accounts of all customers from April 2007 to the present.  (Bell Decl. ¶ 6.) . According to the allegations of the complaint, Ms. Ford was charged an additional $79.90 per month for which she seeks restitution. (Compl. ¶ 48.).  Ms. Booth contends that she was charged $88.87 without authorization.  (Compl. ¶ 41).  In addition to the monthly charge, the Complaint alleges that customers are also frequently charged, without authorization, an additional $24.90 per month for an additional product.  (Compl. ¶¶ 33-34.)

17.    For the period from April 2007 to the present, WebWorks had approximately 455,892 customers in the United States and its territories.   (Bell Decl. ¶ 7).  All or substantially all of those customers pay WebWorks by credit or debit card.  (Bell Decl. ¶ 8).  Assuming, *arguendo*, the accuracy of the allegations in the Complaint, and further assuming that each customer was charged only a *single* monthly charge totaling $69.90, Plaintiffs' restitution claims alone would place in controversy the amount of $31,866,850.80.  If one assumes that each customer was also charged an additional $24.90 per month, the amount in controversy would equal $43,218,561.60.  If one assumes that customers were charged recurring monthly charges as Plaintiffs allege (Compl. ¶ 32), the amount in controversy would increase by a multiple of that amount.

Attorneys' Fees:

18.     Plaintiffs also seek recovery of attorneys' fees. (Compl. ¶¶ 78, 84, 101, 108, 114, p. 27).  The Illinois statutes under which Plaintiffs have brought suit provide for attorneys' fees and consequently can be included in calculating the jurisdictional amount. *See* 815 ILCS 505/10a(c) ("the Court . . . may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party");[1] *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1996) ("[A]ttorneys' fees, incidental damages, and punitive damages . . . all . . . count towards the amount in controversy…."); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998) ("Legal fees may count toward the amount in controversy where the prevailing party is entitled to recover them as part of damages."); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3rd Cir. 1997) ("Although 28 U.S.C. § 1332 excludes 'interests and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").

19.     The Plaintiffs have retained a purportedly experienced class action firm, Edelson McGuire, LLC to bring suit on behalf of the putative class.  (Compl. ¶ 62).  The average attorney fee award in class action cases in the federal courts, as determined by a Federal Judicial Center survey, is 29 percent of the total recovery.  *See* Gregory G. Wrobel & Michael J. Waters, "Early Returns: Impact of the Class Action Fairness Act on Federal Jurisdiction Over State Law Class Actions," 21-FALL Antitrust 45, 50 (Fall 2006).  Plaintiffs' request for attorneys' fees therefore places in controversy an additional amount of at least $9 million.

20.     As shown above, Plaintiffs' claims for general damages and attorneys' fees, by themselves, place the amount in controversy well in excess of $5 million.

---

[1] "Subsections (f), (g), and (h) of section 10a(c) of the Consumer Fraud Act" were held unconstitutional as special legislation in *Allen v. Woodfield Chevrolet, Inc.*, 802 N.E.2d 752 (Ill. 2003). *See Krautsack v. Anderson*, 861 N.E.2d 633, 643 n.1 (Ill. 2006).  The rest of the statute appears to remain intact.

14105231

Civil Penalties:

21.     In the prayer for relief, Plaintiffs request that the Court award "statutory . . . relief." (Compl. p. 27). Plaintiff does not reference any particular statute or law that would entitle Plaintiffs or members of a class to recover civil penalties, or specify the amounts or circumstances under which the Court could award civil penalties. But assuming, *arguendo* that the putative class consists of all or substantially all of WebWorks' customers in Illinois (approximately 26,000 individuals), a "civil penalty" award of $200 to each member of the class would, by itself, place in controversy a sum of more than $5 million.

22.     A preponderance of the evidence shows that this putative class action is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). *See Oshana*, 472 F.3d at 511; *Meridian Sec. Ins. Co.*, 441 F.3d at 543.

23.     Consequently, the case may be removed to this Court by Quad pursuant to the provisions of 28 U.S.C. § 1446 because it is a class action in which the named plaintiffs are "citizen[s] of a State different from any defendant" and because the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).

24.     A copy of this Notice of Removal is being served upon Plaintiffs through their attorneys of record, and filed with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, as provided by 28 U.S.C. § 1446(d).

Copies of all pleadings and orders served upon the removing Defendant in state court have been attached as exhibits hereto, pursuant to 28 U.S.C. § 1446(a).

14105231

WHEREFORE, Defendants pray that the above-entitled action be removed to the United States District Court for the Northern District of Illinois.

DATED this 1st day of December, 2011.

*Attorneys for Defendant The Quad Group, LLC*

s/: Randall D. Lehner
_____
Randall D. Lehner
(IL Bar No. 6237535)
Ulmer & Berne, LLP
500 W. Madison St.,
Suite 3600
Chicago, Illinois  60661
(312) 658-6550

8

14105231

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2011, I filed the foregoing **NOTICE OF REMOVAL** electronically through the CM/ECF system, and served this Notice on the following counsel of record via United States mail, postage prepaid:

Jay Edelson
Rafey Balabanian
Ari Scharg
Benjamin H. Richman
Edelson McGuire, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654

Ari N. Rothman
Venable LLP
575 7th Street, N.W.
Washington, DC 20004-1601


s/: Randall D. Lehner

14105231